| | |
|---|---|
| District Court, Adams County, Colorado<br>1100 Judicial Center Drive<br>Brighton, CO 80601 | DATE FILED: January 18, 2018 9:51 AM<br>FILING ID: 78805692DBC72<br>CASE NUMBER: 2017CV30478 |
| Plaintiff: THOMAS N. SCHEFFEL, II<br><br>v.<br><br>Defendant: General Motors LLC.<br>a Delaware Corporation, doing business in Colorado. | **COURT USE ONLY** |
| Attorneys for Plaintiff:<br>H.J. Ledbetter, #15733<br>Katelyn B. Ridenour, #46253<br>Thomas N. Scheffel & Associates, P.C.<br>3801 E. Florida Ave., Suite 600<br>Denver, CO 80210<br>Phone: (303) 759-5937<br>Email: jledbetter@tnslaw.com;<br>kridenour@tnslaw.com | Case Number: 2017CV30478<br><br>Division: W |
| **COMPLAINT** | |

PLAINTIFF, Thomas N. Scheffel, II ("Mr. Scheffel"), by and through his attorneys, Thomas N. Scheffel & Associates, P.C., for his Complaint against Defendant General Motors Corporation, does hereby assert and allege the following:

**PARTIES, JURISDICTION, AND VENUE**

1. Mr. Scheffel (Scheffel) is a Colorado resident.

2. Defendant General Motors Company is a corporation organized under the law of the State of Delaware with a principal place of business located at 200 Renaissance Ctr. MC482 B09 C24, Detroit, Michigan, 48265.

3. Defendant General Motors Company (GM) is authorized to do business within the State of Colorado, and was doing business in Colorado on March 30, 2015.

4. The District Courts of Colorado have jurisdiction over this matter pursuant to C.R.S. § 13-1-124(1)(b).

5. The collision in question between Scheffel and the vehicle manufactured by GM, giving rise to this action, occurred in Adams County, Colorado.

1

6. Venue is proper in Adams County pursuant to C.R.C.P. 98 (c), and pursuant to the ruling in *Magill v. Ford Motor Company*, 379 P.3d. 1033, 2016 CO 57, (Colo. 2016).

# I.

## GENERAL ALLEGATIONS

7. At approximately 10:22 PM on March 30, 2015, Scheffel was traveling northbound on Interstate 25 in his Toyota Tacoma, within Adams County, Colorado.

8. Scheffel was driving in a reasonable and prudent manner, at a reasonable rate of speed.

9. Scheffel was rested, alert, and not under the influence of any narcotic or alcohol.

10. Traffic on Interstate 25 northbound at that time and place was not congested, and speeds were at the posted limit.

11. Prior to 10:22 PM on March 29, 2015, Ms. May Vue (Vue) was also driving a Chevrolet Cobalt automobile (Cobalt), manufactured by GM, northbound on Interstate 25 within Adams County, Colorado.

12. Vue was driving the Cobalt with the permission of the Cobalt's owner, Sacksith Vue, her son.

13. With no action by Vue, the Cobalt's ignition spontaneously shut-off, and the Cobalt then stopped in the traffic lanes of Interstate 25.

14. The Cobalt came to a complete stop before Scheffel arrived at that location, in the same lane of Interstate 25.

15. Vue did not activate the emergency flashers on the Cobalt.

16. Scheffel was in traffic, and following at a safe distance behind another vehicle, as he drove northbound.

17. The driver of the vehicle directly ahead of Scheffel was surprised by the stalled Cobalt at a stop in the traffic lane of Interstate 25, and swerved hard, barely missing the stalled Cobalt.

18. This vehicle ahead of Scheffel masked the existence of the stalled Cobalt in the traffic lane until that lead vehicle suddenly swerved to avoid the collision.

19. As the vehicle ahead of Scheffel swerved, the stalled Cobalt became known to Scheffel for the first time.

20. At the time Scheffel first saw the stalled Cobalt in the traffic lane ahead of him, he was unable to either swerve, or to stop safely to avoid a collision.

21. Scheffel made reasonable attempts to avoid the collision, but his efforts were unsuccessful.

22. The collision was severe, causing massive damage to both Scheffel's Tacoma, as well as to the Cobalt.

23. Both Scheffel's Tacoma and the Cobalt were rendered total losses.

24. Both Scheffel and Vue sustained serious injuries in the collision, and Vue died as a result of her injuries.

25. As a result of the injuries sustained in the collision, Scheffel incurred extensive medical expenses.

26. Scheffel's damages as a result of the collision include lost wages.

27. Scheffel's damages as a result of the collision include permanent physical damage.

28. Scheffel's damages as a result of the collision include emotional damages.

29. GM is the manufacturer and seller of the Cobalt, as that term is defined by C.R.S.A. §13-12-401.

30. GM is in the business of selling automobiles, specifically the Cobalt.

31. The Cobalt was expected to, and did reach Vue without substantial change in the condition in which the Cobalt was sold.

32. At the time of the collision, the Cobalt was defective, in that it had a fault pertaining to the ignition switch (the defect).

33. The Cobalt was sold by GM in a defective condition and unreasonably dangerous to the user, and to the public.

34. The defect caused the ignition switch to move unexpectedly to the "accessory" mode while traveling on the highway, shutting off the ignition to the motor.

35. The defect caused the complete shut-down of the electrical power to the driver, and thus prevented Vue from activating the emergency flashers.

36. The defect was the proximate cause of the collision, and thus the damages to Scheffel.

37. There is a device called an SDM module on the Cobalt.

38. The SDM module records data regarding many of the Cobalt's systems.

39. The SDM module's recorded data shows that at the time of the collision, the ignition switch for the Cobalt was in the "accessory" mode.

40. At the time of the collision, the Cobalt was being used by Vue in a manner and for a purpose for which the Cobalt was originally intended, and which could reasonably have been expected.

41. GM became aware of the hazard posed by the defect, yet GM chose not to take immediate action to protect the public.

42. GM, for a time, concealed and covered up the defect.

43. Collisions of the type which occurred with Scheffel were reasonably foreseeable by GM as a result of the defect in the Cobalt.

## II.

### FIRST CLAIM FOR RELIEF
### (Product Liability)

44. All of the above paragraphs in section I, General Allegations, are incorporated by reference as if fully set forth herein.

45. Although Scheffel is not the one who purchased the Cobalt, he was in the "zone of injury", and has standing to bring this action pursuant to the ruling in *Bradford v. Bendix-Westinghouse Automotive Air Brake Co.,* 517 P.2d. 406 (Colo.App, 1973).

46. The defect which causes the Cobalt to unexpectedly and suddenly stall in highway traffic is unreasonably dangerous because it is certain that such a defect would jeopardize the life and bodily security of any person who uses the car or who was in the vicinity of its use.

47. As a result of the actions and inactions of GM, Scheffel sustained injuries and suffered general and special damages, in an amount within the jurisdiction of this court, to be determined at trial.

WHEREFORE, premises considered, Scheffel prays for judgment against GM for his damages, and for any other further relief to which he may show himself justly entitled, together with applicable interest, attorney fees and costs which might be properly awarded.

### III.

### SECOND CLAIM FOR RELIEF
### (Negligence)

48. All of the above paragraphs in section I, General Allegations, are incorporated by reference as if fully set forth herein.

49. GM owed a duty to the public to manufacture and sell reasonably safe vehicles.

50. GM breached its duty to the public by manufacturing and selling an unsafe and defective vehicle which hidden defect posed an unreasonably dangerous condition to the user, and the public.

51. GM breached its duty to the public by failing to take prompt corrective action to remove the unreasonably dangerous and defective Cobalt from the public highways.

52. Scheffel is a member of the public to which GM owed its legal duty.

53. The breach of the duty by GM is a proximate cause of the collision, thus Scheffel's damages.

54. As a result of the negligent actions and inactions of GM, Scheffel sustained injuries and suffered general and special damages, in an amount within the jurisdiction of this court, to be determined at trial.

WHEREFORE, premises considered, Scheffel prays for judgment against GM for his damages, and for any other further relief to which he may show himself justly entitled, together with applicable interest, attorney fees and costs which might be properly awarded.

### IV.

### Direct Non-Economic Damages

55. Scheffel sustained, as a result of the acts, or omissions to act, as set forth in Sections II and III above, direct non-economic damages or injuries.

56. Those damages or injuries include PTSD, pain and suffering, inconvenience, emotional stress, and impairment of the quality of life.

WHEREFORE, premises considered, Scheffel prays for judgment against GM for his direct non-economic damages, and for any other further relief to which he may show himself justly entitled, together with applicable interest, attorney fees and costs which might be properly awarded.

### V.

### Jury Trial

57. Scheffel respectfully demands a trial by jury on all issues of fact.

Respectfully submitted this 28th day of March 2017.

                                      **THOMAS N. SCHEFFEL & ASSOCIATES, P.C.**
                                      /s/ *Katelyn B. Ridenour*
                                      Katelyn B. Ridenour, #46253
                                      Thomas N. Scheffel & Associates, P.C.
                                      3801 E. Florida Ave., Suite 600
                                      Denver, CO 80210
                                      (303) 759-5937
                                      Fax: (303) 759-9726

                                      ATTORNEYS FOR PLAINTIFF
                                      THOMAS N. SCHEFFEL, II